UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brendan Kiley Gelner,<br><br>             Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br>*Acting Commissioner of Social Security*,<br><br>             Defendant. | Case No. 17-cv-4202-JNE-KMM<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on the parties' cross-motions for summary judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 12; Def.'s Mot. for Summ. J. ("Def's Mot."), ECF No. 15.) For the reasons set forth below, it is recommended that Plaintiff Brendan Gelner's motion be granted, the Commissioner's motion be denied, and the determination of the Social Security Administration ("SSA") be reversed, and this matter be remanded to the Appeals Council for further review.

### I.    Procedural History and Factual Background

Mr. Gelner applied for Supplemental Security Income on August 12, 2014, alleging a disability that began on his day of birth, July 2, 1996. (Tr. of Admin. R. ("AR") 209–18, ECF No. 10.) His claim was originally denied on October 21, 2014, and denied again upon reconsideration on February 9, 2015. (AR 112–14, 125–40.) A hearing was held in front of an administrative law judge ("ALJ") on March 22, 2016, at which Mr. Gelner appeared and testified. (AR 34.) During that hearing, Mr. Gelner's alleged onset date was amended to July 18, 2014. (*Id*.) After the hearing, the ALJ determined that Mr. Gelner was not disabled using the five-step evaluation procedure from 20 C.F.R §§ 404.1520(a)(4) and 416.920(a)(4). (AR 36–46.)

After this adverse decision, Mr. Gelner requested a review of the ALJ's decision by the Appeals Council. Mr. Gelner submitted additional evidence with that request, including a May 2016 Court Order that named Mr. Gelner's parents as co-guardians (the "Guardianship Order"). (AR 14–15.) On July 21, 2017, the Appeals Council

1

denied review, stating that the Guardianship Order did not relate to the period on or before the date of the ALJ hearing decision. (AR 1–4.) Upon denial of review, the decision of the Commissioner became final, providing the opportunity for judicial review. *See* 42 U.S.C. § 405(g). Mr. Gelner now requests review of the Appeals Council's decision.

### A.   Factual Overview

Mr. Gelner is twenty-one years old, and has suffered from cognitive disabilities his entire life. (AR 361.) Most recently, Mr. Gelner was diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD), Pervasive Developmental Disorder, and a Nonverbal Learning Disorder with significant weakness with visual-spatial processing. (AR 369.) He also demonstrates "limited adaptive behavior and social skills." (*Id.*) These diagnoses are based on Mr. Gelner's most recent intellectual ability testing. These tests revealed a full scale IQ of 82, which is in the 12th percentile. (AR 364.) Of other abilities tested, only Mr. Gelner's Working Memory Index, which he scored at the 63rd percentile, was within an average range. His other scores were very low: his Verbal Comprehension score was in the 23rd percentile, Processing Speed Index in the 8th percentile, and Perceptual Reasoning Index in the 5th percentile. (AR 364–65.) Further testing revealed that Mr. Gelner has extreme deficiencies in verbal processing and verbal memory abilities. (AR 366–67.) He also scored poorly on adaptive functioning tests, which "include[] behaviors that are considered helpful and appropriate and allow an individual to succeed in a given context." (AR 367.) These tests assess three areas of functioning: communication, daily living skills, and socialization. Mr. Gelner scored in the low first percentile for each. (AR 368.) Additional testing, which focused on social language skills important to social interaction with peers, also resulted in low scores. He scored in the third percentile overall, "indicating that social language is a significant challenge for him." (AR 334.)

These cognitive disabilities affect Mr. Gelner's everyday life. Mr. Gelner's parents state that he requires assistance in many personal care activities, such as waking up on time, choosing appropriate clothes for the weather and getting dressed, performing personal hygiene tasks such as brushing his teeth and combing his hair, and taking his medication. (AR 329.) Mr. Gelner also needs help in everyday activities such as performing simple chores like setting the table and doing dishes, doing laundry, walking to and from destinations, scheduling events, purchasing items

2

at a store, ordering at fast-food restaurants, and accessing community services. (*Id.*). Mr. Gelner cannot use a stove and does not cook meals for himself (AR 88–89.)

Mr. Gelner's cognitive difficulties have affected his education and job prospects as well. He received special education services throughout his entire K–12 education, and continued to receive post-high school services through Transitions Plus in order to develop "skills related to independent living, functional math, functional reading, employment skills, and community participation skills." (AR 289.) Mr. Gelner has struggled to develop functional social and job skills. Both staff from Transitions Plus and Mr. Gelner's parents identify difficulties for Mr. Gelner in the areas of organization, planning, expressing himself verbally and non-verbally, auditory memory, and processing speed. (AR 340.) Specifically, Mr. Gelner continues to struggle with responding to requests in a reasonable amount of time, maintaining focus despite distractions, planning steps of a project, completing projects independently, time management, and appropriately participating in discussions by sharing opinions and ideas. (*Id.*)

Mr. Gelner has never held competitive employment. His employment experiences have all been facilitated through programs such as Transitions Plus or Goodwill. (AR 67, 80.) As part of Transitions Plus, Mr. Gelner has worked at the ARC, Ebenezer Scott Highlands Middle School, Rosemount Middle School, and Feed My Starving Children, performing simple tasks such as folding clothes and checking tags, performing janitorial work, and filling bags of rice. (AR 67–69.) Through Goodwill, Mr. Gelner received a job placement at Target. There, Mr. Gelner performed simple tasks such as stocking cans and lifting boxes. (AR 80.) At each of these placements, Mr. Gelner has nearly always had a job coach present. (AR 75–76, 81–82.) At Mr. Gelner's hearing, vocational expert Norman Mastbaum testified on cross-examination that an individual such as Mr. Gelner, who required everyday reminders of one- or two-step tasks and constant supervision to stay on task would not be employable in a competitive environment. (AR 105–06, 108.)

### B. The ALJ's Decision

After the hearing, the ALJ denied Mr. Gelner's application for benefits in a written decision dated April 7, 2016. The ALJ found that Mr. Gelner had several severe impairments: pervasive developmental disorder not otherwise specified,

ADHD, generalized anxiety disorder, and a learning disorder. (AR 36.) However, the ALJ determined that Mr. Gelner's severe impairments only caused moderate restrictions in activities of daily living, social functioning, and maintaining concentration, persistence, and pace. (AR 36–38.) Because the ALJ found that Mr. Gelner's impairments did not meet one of the SSA's listings, the ALJ considered what work Mr. Gelner could do despite his impairments (Mr. Gelner's "residual functional capacity," or "RFC"). The ALJ found that Mr. Gelner could perform medium and light unskilled work such as employment as a vehicle washer, agricultural packer, or folding operator. (AR 46.)

In making this determination, the ALJ gave little weight to the significant testimony of Mr. Gelner's mother, Lori Gelner, because she is not a disinterested third party. (AR 44.) The ALJ also determined that Ms. Gelner's testimony was inconsistent with the opinions of others. (*Id.*) The ALJ assigned greater weight to the statements of Mr. Gelner's teachers and social worker, and significant weight to the state mental health providers who evaluated Mr. Gelner's files. (AR 44–45.)

### III. Analysis

Mr. Gelner challenges the ALJ's decision under three separate theories. First, he argues that the Appeals Council should have considered the post-hearing evidence submitted by Mr. Gelner, namely the Guardianship Order and the state's finding of incapacity. Second, Mr. Gelner argues that the ALJ's RFC determination did not adequately document or take into account Mr. Gelner's need of a job coach and other workplace supports. Finally, Mr. Gelner asserts that the ALJ's analysis at step three was unsupported by substantial evidence of record. This Court agrees with Mr. Gelner's first argument, that the Appeals Council should have considered the post-hearing evidence. As such, it does not reach Mr. Gelner's second or third arguments, and recommends that Mr. Gelner's case be remanded to the Appeals Council for further review.

#### A. This Court's Jurisdiction

As a threshold matter, the Court must decide if it has jurisdiction to address the Appeals Council's decision. The Commissioner argues that the Mr. Gelner cannot challenge the Appeals Council's finding that Mr. Gelner's new evidence did not relate to the period at issue. This Court disagrees.

4

The Commissioner, citing *Califano v. Sanders*, 430 U.S. 99, 107–108 (1977), argues that the Court has no jurisdiction to question the Appeals Council's decision not to review the ALJ's determination, because the Appeals Council's decision is not a final one. However, the Commissioner's reading of *Califano* is incorrect. In *Shinn v. Sullivan*, 915 F.2d 1186, 1187 (8th Cir. 1990), the court rejected this argument, noting:

> We do not read *Sanders* as holding that every dismissal of a request for a hearing is a decision that is not final within the meaning of the act. Rather, the *Sanders* Court directed its attention to the problem of recurrent petitions to reopen a denial of benefits. By denying a claimant the right to obtain judicial review simply by filing, and then appealing from the denial of, a petition to reopen his claim, the Court recognized and respected Congress' policy choice of a procedure designed to forestall repetitive or belated litigation of stale eligibility claims.

*Id.* (citation and quotation omitted). Mr. Gelner's case is not about reopening a claim for benefits, as was at issue in *Sanders*, but instead challenges the denial of review based on new evidence.

Several decisions demonstrate that a district court may in fact review both the Appeals Council's refusal to consider additional evidence and its subsequent denial of review. *See, e.g.*, *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (noting that the denial of review based on failure to consider additional evidence "may be a basis for remand by a reviewing court") (citing *Williams v. Sullivan*, 905 F.2d 214, 216–17 (8th Cir. 1990)); *Keeton v. Department of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("When the Appeals council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law."); *see also Stimpson v. Berryhill*, No. 17-cv-824 (HB), 2018 WL 1440336 (D. Minn. Mar. 22, 2018) (reviewing an Appeals Council denial of review); *Laveau v. Astrue*, No. 11-cv-505 (SRN/LIB), 2012 WL 983598 (D. Minn. Feb. 14, 2012) (same); *Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251–52 (N.D. Al. 2001) (collecting cases). The Commissioner does not offer a basis for disregarding this authority, and the Court does not find one. Thus, this Court will review the Appeals Council's refusal to review Mr. Gelner's new evidence.

### B. Consideration of the Post-Hearing Evidence

Whether the Appeals Counsel must consider information submitted after the issuance of an ALJ's decision requires consideration of three factors. "[T]he Appeals

Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision.'" *Box*, 52 F.3d at 171 (quoting *Williams*, 905 F.2d at 216–17). Section 404.970(b) of Title 20 of the Code of Federal Regulations states:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Evidence is new when it is "more than merely cumulative of other evidence in the record." *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). Evidence is material when it is "relevant to [the] claimant's condition for the time period for which benefits were denied." *Id.* District courts review de novo whether the evidence at issue is new, material, and related to the relevant time period. *Box*, 52 F.3d at 171.

**Relation to the Relevant Time Period**

The Appeals Council determined that the new evidence was not related to the period at issue, specifically, prior to the ALJ's decision. (AR 1–4.) This Court disagrees. Although Mr. Gelner's parents were appointed co-guardians after the ALJ's decision, the Guardianship Order was based on evidence that related to Mr. Gelner's condition before the date of the ALJ's decision, and was based on evidence from throughout and even before the claimed period of disability.[1] *See Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990) ("The timing of the [additional evidence] is not dispositive of whether evidence is material.") The new evidence offered by Mr. Gelner does not detail a "later-acquired disabilit[y] or subsequent deterioration of a previously non-disabling condition." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). Rather, it discusses the medical condition that Mr. Gelner originally presented

---

[1] For example, included within the petition for guardianship was a letter of support from one of Mr. Gelner's doctors, Dr. Arthur P. Troedson. Using his own notes from 2015 and 2016—well within the relevant period—as well as earlier case records, Dr. Troedson concluded that Mr. Gelner needed a guardian to assist in activities of daily living. (AR 30.)

6

to the ALJ, but provides more specific details regarding Mr. Gelner's ability to live on his own and take care of himself appropriately.

### Materiality

The Commissioner asserts that, even if the information relates to the time period at issue, it is not material because the state's finding that Mr. Gelner is a vulnerable adult has no bearing on his ability to obtain competitive employment. Again, the Court disagrees. While the Appeals Council may ultimately find that the guardianship determination does not undermine the ALJ's decision, the Guardianship Order is plainly material and significant to the question of whether Mr. Gelner can work independently. In making a determination at Step Three of the sequential analysis, the ALJ considers the level of restriction that a petitioner's impairments cause both in daily living and social function. The State of Minnesota determined that Mr. Gelner "is an incapacitated person [who] lacks sufficient understanding or capacity to make or communicate responsible decisions concerning [his] person…and has demonstrated behavioral deficits evidencing an inability to meet [his] needs for medical care, nutrition, clothing, shelter, and/or safety." (AR 24.) Further, the State found that Mr. Gelner requires assistance when interacting with others in the community, and "is quite vulnerable to exploitation and requires supervision to remain safe in his home and in the community." (*Id.*) These activities are directly related to daily living and social function. The Guardianship Order is additional new evidence that offers "specific findings and conclusions" that are "more than merely cumulative of other evidence in the record." *Bergmann*, 207 F.3d at 1069. As such, the Appeals Council should have considered this new evidence. *See* 20 C.F.R. § 404.970(b).

Although the Court recommends remand to the Appeals Council based on its failure to consider additional evidence, and therefore does not reach Mr. Gelner's other arguments, a review of those issues highlights that Mr. Gelner's case is a close one, where additional evidence could easily change the outcome. In particular, Mr. Gelner argues that the ALJ's determination of "moderate" instead of "marked" limitations in functioning was not supported by the substantive evidence of record. As discussed above, the Guardianship Order is an additional evaluation of Mr. Gelner's functional limitations made relevant by the regulations. If the Appeals

Council had considered the Guardianship Order, it may have shifted the weight of the evidence in this close case in Mr. Gelner's favor.[2]

## VI. Conclusion

Accordingly, and for the reasons set forth above, it is recommended that the Commissioner's motion for summary judgement, ECF No. 15, be **denied**. Mr. Gelner's motion, ECF No. 12, be **granted**.  The matter should be remanded to the Appeals Council for further proceedings pursuant to sentence 4 of 42 U.S.C. § 405(g).

Date: July 24, 2018    /s/ *Katherine Menendez*
                         Katherine Menendez
                         United States Magistrate Judge

---

[2] Because the Court recommends that this case be sent back to the Appeals Council for evidence that may affect Step Three of the ALJ's determination, the Court does not reach a conclusion regarding Mr. Gelner's other argument, that the ALJ's determination of Mr. Gelner's RFC did not adequately reflect Mr. Gelner's need for ongoing workplace support, which implicates Step Four.

8

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.